**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ADOLPH BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-2896 |
| | § | |
| CHEVRON PHILLIPS CHEMICAL CO., LP, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

The plaintiff, Adolph Brown, seeks a declaratory judgment that he properly revoked the settlement and release agreement he entered into with his former employer, Chevron Phillips Chemical Co., under the Older Workers Benefit Protection Act of 1990 (OWBPA), 29 U.S.C. § 626(f), relating to his unlawful termination claim. Brown wants to arbitrate his claim that his 2009 termination was unlawful. He seeks arbitration under the collective-bargaining agreement between his labor union, the United Steelworkers Local 13-227 ("Union"), and his former employer, Chevron. An arbitration was scheduled for August 2009 but was cancelled when Brown had signed the settlement and release.

Chevron has moved for summary judgment on Brown's claims. Chevron argues that: (1) Brown lacks standing to seek the declaratory judgment because he has not asserted a substantive age-discrimination claim; (2) Brown's declaratory-judgment request is time-barred; and (3) even if Brown is correct that the OWBPA invalidates the waiver as to his ADEA claim, it does not invalidate the waiver as to other claims. (Docket Entry No. 28). Brown has responded to the motion. (Docket Entry No. 30).

Based on the pleadings, the motion and response, the record, and the relevant law, the court grants Chevron's motion for summary judgment and enters final judgment by separate order. The reasons are explained below.

## I.     Background

The relevant facts are undisputed. Chevron terminated Brown's employment in March 2009, stating Brown's involvement in an industrial accident as the reason. (Docket Entry No. 28, Ex. A, ¶ 4; Ex. B). Brown challenged the termination through the Union. The Union filed a grievance on Brown's behalf contesting the termination. Chevron denied the grievance. The Union invoked arbitration under the collective-bargaining agreement between Chevron and the Union. The arbitration was cancelled when Brown agreed to accept $4,000 to settle and release all of his claims related to his termination. (*Id.*, Ex. F).

Five days later, Brown sent Chevron a letter revoking the settlement and requesting arbitration. (*Id.*, Ex. H.) He returned the settlement check with the letter. (*Id.*, Ex. H). Chevron did not accept Brown's revocation. On August 12, Chevron stated:

> [We are] in receipt of your letter dated August 10, 2009, in which you state that you wish to revoke the agreement we signed to settle your arbitration. We do not accept your revocation and consider the settlement agreement valid. You have been paid under the terms of the settlement agreement and have no basis for voiding that agreement with the Company. I suggest that if you have issues with your agreement that you speak with your [Union] representatives. The Company considers this matter resolved and closed.

Brown unsuccessfully tried to return the check to Chevron several more times. (*Id.*, Ex. I).

On August 10, 2009, Brown sent a letter to his Union, asking it to revoke the settlement agreement. (*Id.*, Ex. J). The Union responded that it could not revoke the settlement agreement because it was not a party to that agreement. The Union replied to Brown's letter, as follows:

2

The United Steelworkers Local 13-227 is in receipt of your letter dated August 10, 2009 requesting that the "Union" revoke the Compromise and Settlement Agreement and Release that you (Adolph Brown) signed with the Chevron Phillips Chemical Company LP (Leslie Shaunty) on August 5, 2009. Please be advised that the Settlement Agreement was made on behalf of yourself (Adolph Brown) and the Chevron Phillips Chemical Company LP (Leslie Shaunty). Although the Union did not enter into the aforementioned Settlement Agreement between You and the Company, and the Union has no authority in whether you sign an agreement with the Company, we have taken the liberty to request that the Settlement Agreement be revoked. However, the Company has denied the request to revoke your Settlement Agreement. The Union did prepare for, and was prepared to, arbitrate your grievance (CP-2-09/Unjust Termination) on August 5, 2009. The Union does not have the authority to revoke a Legal and Binding agreement between you and the Company.

(Docket Entry No. 11-4.)

On August 12, 2009, Brown filed a charge with the National Labor Relations Review Board (NLRB). He asserted that the Union had failed to represent him "regarding a grievance concerning his discharge." (*Id.*, Ex. J at 4). On October 2, 2009, the NLRB's regional director issued a decision dismissing Brown's claims. The NLRB concluded that "the Union was well within its discretion when it determined not to revoke the settlement agreement and reinstate the grievance [and that] . . . the Union's refusal to request that the Employer rescind the settlement is not unreasonable under the circumstances herein." (*Id.*, Ex. J at 8). Brown appealed. On January 12, 2010, the NLRB's general counsel affirmed the regional director's refusal to issue his complaint. (*Id.*, Ex. J at 12).

On December 7, 2009, Brown submitted a discrimination charge to the Texas Workforce Commission Civil Rights Division. Brown alleged that his job termination was based on his sex, in violation of Title VII. (*Id.* Ex. E at 1). On December 9, 2009, Brown filed a similar charge with

the Equal Employment Opportunity Commission (EEOC).  (*Id.*, Ex. J at 12–14).  He received a right-to-sue letter but did not file suit.

In August 2011, Brown filed this suit against Chevron.  Brown seeks a declaratory judgment that his August 10, 2009 letter revoked the settlement and release agreement under the OWBPA and that the agreement is invalid.  (Docket Entry No. 11, ¶ 29).  Brown alleges that if this court grants the declaratory relief he seeks, he will be entitled to arbitrate his wrongful termination claim against Chevron, and that he intends to do so.  (*Id.*, ¶¶ 16 & 28).

Chevron moved for summary judgment.  The parties' arguments are analyzed below.

## II.    The Summary-Judgment Standard

In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).  When the moving party has met its Rule 56 burden, the nonmoving party must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir.  2007).  "This burden is not satisfied with some metaphysical doubt as to the material facts, by unsubstantiated assertions, or by only a scintilla of evidence."  *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted).  Factual controversies are to be resolved in the nonmoving party's favor, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Id.*

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] citing to particular parts of materials in the record including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials."  FED. R. CIV. PRO.

4

56(c)(1)(A). A party can also show that cited materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. PRO. 56(c)(1)(B). The court is not required to go beyond the parts of the record that the parties specifically cite. FED. R. CIV. PRO. 56(c)(3).

## III.  Discussion

The Declaratory Judgment Act permits a federal court "in a case of actual controversy . . . upon the filing of an appropriate pleading" to "declare the rights and other legal relations" of parties, "whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Fifth Circuit "interprets the § 2201 'case of actual controversy' requirement to be conterminous with Article III's 'case or controversy' requirement." *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006). An "actual controversy" is a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation and internal quotation marks omitted). The controversy "must be of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." *Tex. Cent. Business Lines Corp. v. City of Midlothian*, 669 F.3d 525, 534 (5th Cir. 2012) (quotation omitted). It "must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (quotation omitted). "The burden is on the plaintiff to establish by a preponderance of the evidence the existence of an actual controversy." *Hosein*, 452 F.3d at 404.

"Congress adopted the OWBPA as an amendment to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(f)." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 375 (5th Cir. 2002); *see also Blakeney v. Lomas Information Systems, Inc.,* 65 F.3d 482, 484 (5th Cir. 1995).

Section 626(f)(1) requires an employer to institute procedural safeguards to ensure that an employee's waiver of an ADEA claim is knowing and voluntary. *See Blakeney*, 65 F.3d at 484. For example, the release must specifically refer to the ADEA, advise the employee to consult with an attorney, and provide a statutory grace period for the employee to consider the agreement. *See id.* at 484. (citing 29 U.S.C. §§ 626(f)(1)(B), (E), (F)). An OWBPA deficiency only revives the ADEA claim; it does not create a "general law of releases for all federal claims." *Chaplin*, 307 F.3d at 375.

The release Brown signed did not meet the OWBPA's requirements for a valid release of his ADEA claim. The release did not refer to the ADEA, advise the employee to consult with an attorney, or provide for the statutory grace period. Brown's release was voidable. To rescind a settlement agreement because it fails to include the OWBPA's procedural safeguards, the employee must meet two requirements. *Blakeney*, 65 F.3d at 484. First, the employee must "restore the status quo ante." *See id.* Second, the rescission must promptly follow the discovery of the OWBPA deficiency. *See id.* The record shows that Brown met both of these requirements. Five days after he signed the settlement agreement, he sent a letter of revocation and tried to return the money.

The issue Chevron raises in its summary-judgment motion is whether there exists a case or controversy to support the declaratory judgment Brown seeks. Chevron argues that for Brown to proceed on his claim for a declaratory judgment that he properly revoked the settlement under the OWBPA so that he can arbitrate the underlying claim, there must be a viable underlying claim. Chevron argues that an actual controversy does not exist because the OWBPA serves only to invalidate a deficient ADEA release and any ADEA claim that Brown might have asserted is time-barred. An action for declaratory relief "will be barred to the same extent the applicable statute of

limitations bars the concurrent legal remedy" or "the substantive claims underlying the action."

*Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 181 (3d Cir. 1997).

Brown responds by stating that he does not intend to arbitrate a claim that his March 2009 termination violated the ADEA or other discrimination statute. Instead, he intends to arbitrate a claim that the termination breached the collective-bargaining agreement. Brown has not identified summary-judgment evidence establishing an actionable ADEA claim, and any other claim arising out of his termination – including a breach-of-contract claim – was not affected by the deficient release or its revocation under the OWBPA. Under the OWBPA, the settlement agreement was deficient only as to the release of the ADEA claim. Because Brown has not identified a viable underlying claim, he has no basis to pursue a declaratory judgment that he properly rescinded the settlement of his ADEA claim under the OWBPA.

## III.    Conclusion

For the foregoing reasons, Chevron's motion for summary judgment (Docket Entry No. 28) is granted. The court will enter final judgment by separate order.

SIGNED on September 30, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

7